Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| ÁNGEL L. OTERO Y OTROS<br><br>Apelantes<br><br>v.<br><br>BCPEABODY CONSTRUCTION SERVICES, LLC Y OTROS<br><br>Apelados | TA2026AP00522 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.: PE2021CV00106<br><br>Sobre: Incumplimiento de Contrato, Cobro de Dinero – Ordinario Daños y Perjuicios |

Panel integrado por su presidente, el Juez Bonilla Ortiz, la Jueza Martínez Cordero y el Juez Robles Adorno.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de mayo de 2026.

Comparece ante nos el señor Ángel L. Otero y el señor Ronal Salas (en adelante, señor Otero y señor Salas y en conjunto, la parte apelante) mediante un recurso de apelación, para solicitar la revisión de dos (2) dictámenes judiciales.

El *primer* dictamen es una *Sentencia* emitida y notificada el 30 de marzo de 2026, por el Tribunal de Primera Instancia, Sala Superior de Ponce.[1] Mediante el referido dictamen, el foro primario declaró *No Ha Lugar* la *Demanda* e impuso al apelante el pago de $12,000.00 dólares en concepto de honorarios por temeridad. Además, ordenó a la parte apelada del título a presentar su memorando de costas.

Por otro lado, el *segundo* dictamen objeto de revisión es una *Resolución* emitida y notificada el 6 de mayo de 2026,[2] mediante la

---

[1] Sistema Unificado de Manejo y Administración de Casos en el Tribunal de Primera Instancia (SUMAC TPI), a la Entrada Núm. 160.
[2] SUMAC TPI, a la Entrada Núm. 167.

cual el foro de instancia autorizó el *Memorando de costas* presentado por la parte apelada del título.[3]

Por los fundamentos que expondremos, se *desestima* el recurso incoado por falta de jurisdicción.

I.

El caso de marras inició el 5 de noviembre de 2021, cuando la parte apelante, así como el señor Ángel M. Morales Amaro (en adelante, señor Morales Amaro) y el señor Alejandro Goycochea Aponte (en adelante, señor Goycochea Aponte) instaron una *Demanda* contra la corporación BCPeabody Construction Services, LLC, (en adelante, BCPeabody o parte apelada), Aseguradoras X, Y y Z, John Doe y demandados desconocidos, sobre incumplimiento de contrato; cobro de dinero, daños y perjuicios.[4]

Adujo que, entre BCPeabody, la parte apelante; el señor Morales Amaro, así como el señor Goycochea Aponte existía una relación contractual en virtud de ciertos contratos de consultoría otorgados el 1 de enero de 2020. Esbozó que, luego de realizar los trabajos según pactados, BCPeabody incumplió con efectuar el pago conforme a la factura que le fue remitida. Alegó que la deuda estaba vencida, era líquida, exigible y reconocida por la parte apelada. A tenor, solicitó que se ordenara a la parte apelada el pago de las cantidades reclamadas. Por otro lado, solicitó la imposición de una suma no menor de $40,000.00 dólares en concepto de daños a cada uno de los demandantes y, una cuantía de $25,000.00 dólares por concepto de costas y honorarios de abogado.

Luego de varios incidentes procesales innecesarios resumir, el 8 de marzo de 2022, BCPeabody presentó su *Contestación a la demanda.*[5] Negó la mayoría de las alegaciones, presentó sus

---

[3] SUMAC TPI, a la Entrada Núm. 161.
[4] *Íd*, a la Entrada Núm. 1.
[5] *Íd.,* a la Entrada Núm. 13.

defensas afirmativas. De otra parte, rogó se impusiera una suma por concepto de costas, honorarios de abogado e intereses por temeridad. Lo anterior, tras entender se le estaba sometiendo injustificadamente a defenderse de alegaciones basadas en hechos falsos.

Luego, el 26 de abril de 2022, las partes presentaron el *Informe para al manejo del caso.*[6]

Subsiguientemente, el 18 de mayo de 2022, el señor Goycochea Aponte presentó una solicitud para desistir sin perjuicio de la acción incoada y de la cual él figuraba como parte demandante.[7] En respuesta, mediante *Sentencia Parcial* emitida el 19 de mayo de 2022, notificada el 23 de mayo de 2022, el foro *a quo* concedió lo solicitado por el señor Goycochea Aponte, por lo que dio por desistida la causa de acción sin perjuicio en cuanto a este.[8]

Se desprende de los autos que la vista sobre conferencia inicial fue celebrada y allí quedó calendarizado el descubrimiento de prueba.[9]

Posteriormente, mediante *Orden* notificada el 10 de junio de 2022, el tribunal de instancia señaló la vista sobre conferencia con antelación a juicio para el 23 de enero de 2023, y requirió a las partes a presentar el correspondiente informe preliminar entre abogados.[10]

Así las cosas, las partes estuvieron inmersas en el descubrimiento de prueba. En el interín, el 22 de noviembre de 2022, la representación legal de los demandantes del título presentó una solicitud mediante la cual anunció la renuncia de la representación legal del señor Morales Amaro.[11] Lo anterior, luego

---

[6] SUMAC TPI, a la Entrada Núm. 22.
[7] *Íd.,* a la Entrada Núm. 25.
[8] *Íd.,* a la Entrada Núm. 27.
[9] *Íd.,* a la Entrada Núm. 31.
[10] *Íd.,* a la Entrada Núm. 30.
[11] *Íd.,* a la Entrada Núm. 42.

de informar que existían diferencias irreconciliables. El letrado informó haberle enviado el expediente completo de su caso al correo electrónico moralesa5830@gmail.com. De igual forma, notificó que la dirección postal del señor Morales Amaro era: Ext. Punto Oro, 4752 c/La Almiranta, Ponce, PR 00728. Mencionó que se informaba el correo electrónico para las notificaciones que se fuesen a emitir.

En respuesta, mediante *Orden* emitida y notificada el 29 de noviembre de 2022, el foro de instancia aceptó la renuncia de representación legal y le concedió al señor Morales Amaro el término de treinta (30) días para anunciar nueva representación legal, de tener interés en continuar su causa de acción.[12] Por otro lado, ordenó que se le notificara dicha *Orden* a su dirección postal y a su correo electrónico. Puntualizamos que dicha *Orden* le fue notificada al señor Morales Amaro solo a su dirección postal.

Luego, el 4 de enero de 2023, el tribunal de instancia emitió una *Orden* mediante la cual concedió al señor Morales Amaro un término de diez (10) días para mostrar causa por el incumplimiento con la Orden del 29 de noviembre de 2022.[13] Esta *Orden* fue notificada a la parte apelante, a la parte apelada y al señor Morales Amaro.

Posteriormente, a solicitud de la parte apelante y de la parte apelada,[14] mediante *Orden* notificada el 19 de enero de 2023, el foro de instancia convirtió la vista sobre conferencia con antelación a juicio programada para el 23 de enero de 2023, en una sobre el estado de los procedimientos.[15]

---

[12] SUMAC TPI, a la Entrada Núm. 43.
[13] *Íd.*, a la Entrada Núm. 44.
[14] *Íd.*, a la Entrada Núm. 45. Para esta fecha, ya el señor Morales Amaro no contaba con representación legal, no participó de la presentación de este escrito ni se desprende que hubiese sido notificado del mismo. Lo anterior, aun cuando del escrito presentado se desprende que compareció la parte demandante y la parte demandada.
[15] *Íd.,* a la Entrada Núm. 46.

A la vista compareció la parte apelante y la parte apelada.[16] No compareció el señor Morales Amaro. Durante la vista se argumentó en términos de que para poder quedar claros sobre quiénes eran las partes demandantes en el caso, se le debía destacar al señor Morales Amaro, dada su incomparecencia, se dictaminara la desestimación del caso en su contra. Entonces, el mismo 23 de enero de 2023, el foro de instancia emitió una *Orden* en la cual concedió un término final de diez (10) días al señor Morales Amaro para cumplir con la *Orden* del 29 de noviembre de 2022, so pena de desestimación.[17] Destacamos que dicha *Orden* le fue notificada al señor Morales tanto a su dirección postal como a su correo electrónico.

La vista sobre conferencia con antelación a juicio quedó señalada para el 30 de junio de 2023.[18] La *Minuta* de la vista no fue firmada ni tampoco notificada a ninguna de las partes.

Así las cosas, mediante *Orden* emitida y notificada el 21 de junio de 2023, el tribunal de instancia concedió a las partes hasta el 22 de junio de 2023, para presentar el informe de preliminar entre abogados.[19] Esta *Orden* fue notificada a la parte apelante, a la parte apelada y al señor Morales Amaro.

De ahí, el 22 de junio de 2023, la parte apelante y la parte apelada presentaron el *Informe de conferencia preliminar entre abogados.*[20] De este informe no se desprende participación alguna por parte del señor Morales Amaro.

Celebrada la vista sobre conferencia con antelación a juicio, el tribunal *a quo* emitió y notificó la *Minuta* de la misma el 20 de

---

[16] SUMAC TPI, a la Entrada Núm. 48.
[17] *Íd.,* a la Entrada Núm. 47.
[18] *Íd.,* a la Entrada Núm. 48.
[19] *Íd.*, a la Entradas Núm. 51 y 52.
[20] *Íd.,* a la Entrada Núm. 53. Destacamos que del SUMAC TPI no se desprende que este escrito le hubiese sido notificado al señor Morales Amaro, aun cuando figuraba como parte demandante en el caso representándose por derecho propio.

julio de 2023.[21] La parte apelante y la parte apelada fueron notificados de la *Minuta*, no así el señor Morales Amaro.

En la vista, el foro de instancia calendarizó el juicio en su fondo para los días 7, 8 y 9 de febrero de 2024. Requirió, además, que se presentara un informe de conferencia preliminar entre abogados enmendado, para lo cual concedió hasta el 15 de diciembre de 2023.

Luego de varios incidentes innecesarios pormenorizar, el 15 de diciembre de 2023, notificada el 18 de diciembre de 2023, el tribunal de instancia emitió una *Orden* relacionada al juicio en su fondo y a los términos para que se presentara transacción, de lograrse, así como el calendario para los días de juicio.[22] Esta *Orden* le fue notificada a la parte apelante, a la parte apelada y al señor Morales Amaro.

En cumplimiento con lo ordenado, el 22 de diciembre de 2023, la parte apelante y la parte apelada presentaron el *Informe de conferencia preliminar entre abogados enmendado*.[23] De este informe no se desprende participación alguna por parte del señor Morales Amaro. En respuesta, mediante *Orden* emitida el 26 de diciembre de 2023, y notificada al día siguiente, el foro de instancia concedió a las partes hasta el 25 de enero de 2024, para presentar moción con la prueba documental y para culminar las ofertas y contraofertas e informar la posibilidad de transacción.[24] Señaló que, de no llegar a un acuerdo, el juicio comenzaría el 7 de febrero de 2024. Esta *Orden* le fue notificada a la parte apelante, a la parte apelada y al señor Morales Amaro.

Por otro lado, el 25 de enero de 2024, la parte apelante y la parte apelada presentaron una *Moción conjunta en cumplimiento de*

---

[21] SUMAC TPI, a la Entrada Núm. 55.
[22] *Íd.*, a la Entrada Núm. 63.
[23] *Íd.,* a la Entrada Núm. 64. No se desprende que este escrito le hubiese sido notificado al señor Morales Amaro.
[24] *Íd.,* a la Entrada Núm. 65.

*orden,* con la finalidad de cargar al SUMAC la prueba documental estipulada a ser utilizada durante el juicio en su fondo.[25] En esa misma fecha, la parte apelada también presentó una *Moción en cumplimiento de orden,* con la finalidad de cargar al SUMAC la prueba documental incluida como identificación de dicha parte.[26] Por su parte, en igual fecha y siguiendo igual curso de acción, la parte apelante interpuso *Cumplimiento de orden sobre prueba de identificación de la parte demandante.*[27]

Así las cosas, mediante *Orden* notificada el 6 de febrero de 2024, el tribunal de instancia dejó sin efecto el juicio en su fondo y lo reseñaló para los días 29, 30 y 31 de mayo de 2024.[28] Esta *Orden* fue notificada a la parte apelante, a la parte apelada y al señor Morales Amaro.

Posteriormente, a *Solicitud de transferencia de juicio en su fondo* instada por la parte apelante,[29] el foro de instancia emitió una *Orden* notificada el 26 de febrero de 2024, mediante la cual se reseñaló el juicio nuevamente para los días 14, 15 y 16 de agosto de 2024.[30] De igual forma, esta *Orden* le fue notificada a la parte apelante, a la parte apelada y al señor Morales Amaro.

El 9 de julio de 2024, la parte apelada instó una *Moción informativa y en solicitud de providencia.*[31] En respuesta, mediante *Orden* notificada el 9 de julio de 2024, el foro *a quo* autorizó a los testigos, señor Robert Carpenter y señor Kevin Osbourne, a comparecer y prestar testimonio durante el juicio en su fondo,

---

[25] SUMAC TPI, a la Entrada Núm. 69, con sus anejos identificados desde el I hasta el IV. No se desprende que este escrito le hubiese sido notificado al señor Morales Amaro.

[26] *Íd.,* a la Entrada Núm. 71, con sus anejos identificados desde la A hasta la F. No se desprende que este escrito le hubiese sido notificado al señor Morales Amaro.

[27] *Íd.,* a la Entrada Núm. 72, con sus anejos identificados desde el 1 hasta el 12. No se desprende que este escrito le hubiese sido notificado al señor Morales Amaro.

[28] *Íd.,* a la Entrada Núm. 74.

[29] *Íd.,* a la Entrada Núm. 77.

[30] *Íd.,* a la Entrada Núm. 79.

[31] *Íd.,* a la Entrada Núm. 83. No se desprende que este escrito le hubiese sido notificado al señor Morales Amaro.

mediante videoconferencia.[32] Esta *Orden* le fue notificada a la parte apelante, a la parte apelada, no así al señor Morales Amaro.

En esa misma fecha, tanto la parte apelante presentó escrito con la finalidad de que, dado a lo resuelto por el tribunal en torno a la comparecencia de dos (2) testigos de forma virtual, se celebrara la totalidad del juicio utilizando dicho mecanismo,[33] lo cual, mediante *Resolución* del 10 de julio de 2024, notificada al día siguiente, fue declarado *No Ha Lugar*.[34] Esta *Resolución* le fue notificada a la parte apelante, a la parte apelada, no así al señor Morales Amaro.

Se deprende de los autos que el juicio en su fondo tuvo que ser reseñalado tras el paso de la Tormenta Ernesto por la isla de Puerto Rico, por lo que mediante *Orden* notificada el 13 de agosto de 2024, el juicio se reseñaló para los días 3 y 6 de febrero de 2025.[35] Esta *Orden* le fue notificada tanto a la parte apelante, a la parte apelada, así como al señor Morales Amaro.

Así las cosas, el 31 de enero de 2025, la parte apelante presentó una *Moción urgente solicitando suspensión de vista en su fondo*.[36] Solicitó la transferencia del juicio, en síntesis, dado a que el señor Salas se encontraba indispuesto de salud, lo que había provocado hubiese ido a una facilidad hospitalaria. La parte apelada se opuso.[37] La parte apelante replicó.[38] En respuesta, mediante *Resolución* emitida y notificada el 3 de febrero de 2026, el tribunal de instancia denegó la suspensión del juicio, razonando que el mismo había sido suspendido en varias ocasiones.[39] Esta *Resolución*

---

[32] SUMAC TPI, a la Entrada Núm. 84.
[33] *Íd.,* a la Entrada Núm. 85. No se desprende que este escrito le hubiese sido notificado al señor Morales Amaro.
[34] *Íd.,* a la Entrada Núm. 86.
[35] *Íd.,* a la Entrada Núm. 92.
[36] *Íd.,* a la Entrada Núm. 96. No se desprende que este escrito le hubiese sido notificado al señor Morales Amaro.
[37] *Íd.,* a la Entrada Núm. 97. No se desprende que este escrito le hubiese sido notificado al señor Morales Amaro.
[38] *Íd.,* a la Entrada Núm. 98. No se desprende que este escrito le hubiese sido notificado al señor Morales Amaro.
[39] *Íd.,* a la Entrada Núm. 99.

le fue notificada a la parte apelante, a la parte apelada, no así al señor Morales Amaro.

Llegada la hora del juicio y llamado el caso, compareció la parte apelada pero no compareció la parte apelante ni su representante legal.[40] Tampoco compareció el señor Morales Amaro ni representación legal alguna. A tenor, mediante *Orden* notificada en esa misma fecha, se le ordenó a la parte apelante a mostrar causa por su incomparecencia y se le concedió hasta las 9:45 de la mañana, para comparecer para comenzar el juicio so pena de sanciones graves de por lo menos $250.00 dólares.[41] Esta *Orden* le fue notificada a la parte apelante, a la parte apelada, no así al señor Morales Amaro.

De ahí, el 3 de febrero de 2025, a las 12:07 de la tarde, la parte apelante compareció mediante *Moción de reconsideración y en cumplimiento de orden.*[42] La parte apelada se opuso.[43] En respuesta, mediante *Resolución* emitida y notificada el 3 de febrero de 2025, el tribunal de instancia declaró *No Ha Lugar* la solicitud de reconsideración.[44] Esta *Resolución* le fue notificada a la parte apelante, a la parte apelada, no así al señor Morales Amaro.

Así las cosas, el juicio en su fondo fue llamado en calendario nuevamente el 4 de febrero de 2025. Compareció la parte apelada pero no compareció la parte apelante ni su representante legal.[45] Tampoco compareció el señor Morales Amaro ni representación legal alguna.

Se desprende de la *Minuta* de la vista, que el foro de instancia señaló una vista para el 9 de mayo de 2025, con la finalidad de

---

[40] SUMAC TPI, a la Entrada Núm. 106.
[41] *Íd.,* a la Entrada Núm. 101.
[42] *Íd.,* a la Entrada Núm. 102. No se desprende que este escrito se le hubiese notificado al señor Morales Amaro.
[43] *Íd.,* a la Entrada Núm. 103. No se desprende que este escrito se le hubiese notificado al señor Morales Amaro.
[44] *Íd.,* a la Entrada Núm. 104.
[45] *Íd.,* a la Entrada Núm. 111.

marcar la prueba.[46] Además, durante la vista, el foro de instancia procedió a recalendarizar el juicio en su fondo para los días 4, 5 y 6 de junio de 2025, impuso una sanción económica a la parte apelante por la suma de $250.00 dólares y ordenó a la parte apelada a presentar un memorando de costas desglosando los gastos incurridos en los dos (2) días en que no se había atendido el juicio en su fondo, entiéndase, el 3 y 4 de febrero de 2025. Esta *Minuta* no fue firmada ni notificada a ninguna de las partes.

El mismo 4 de febrero de 2025, mediante *Orden,* el foro de instancia le requirió a la parte apelante a mostrar causa por su incomparecencia, so pena de imponerle $250.00 dólares por concepto de sanciones.[47] Esta *Orden* le fue notificada a la parte apelante, a la parte apelada y al señor Morales Amaro.

Así las cosas, el 5 de febrero de 2025, la parte apelada instó una *Moción en cumplimiento de orden sobre sanciones.*[48] Sintetizó lo acaecido durante los pasados dos (2) días de juicio, incluyendo las órdenes impartidas y presentó un detalle sobre las costas incurridas para esas fechas. Con lo relativo a la orden de mostrar causa, el 5 de febrero de 2025, la parte apelante compareció mediante *Moción en cumplimiento de orden de mostrar causa.*[49] Allí, esbozó las razones para lo acaecido.

En el interín, mediante *Resolución* emitida el 5 de febrero, notificada al día siguiente, el tribunal de instancia, por vía de reconsideración, dejó sin efecto la sanción económica impuesta a la parte apelante, pero mantuvo la presentación del memorando de costas.[50] Esta *Resolución* le fue notificada a la parte apelante, a la parte apelada, no así al señor Morales Amaro.

---

[46] SUMAC TPI, a la Entrada Núm. 111.
[47] *Íd.,* a la Entrada Núm. 107.
[48] *Íd.,* a la Entrada Núm. 112. No se desprende que este escrito le hubiese sido notificado al señor Morales Amaro.
[49] *Íd.,* a la Entrada Núm. 110. No se desprende que este escrito le hubiese sido notificado al señor Amaro.
[50] *Íd.,* a la Entrada Núm. 113.

Así las cosas, mediante *Resolución* emitida el 5 de febrero de 2025, notificada al día siguiente, el foro primario ordenó el pago de los gastos reclamados por la suspensión del juicio en su fondo.[51] Esta *Resolución* le fue notificada a la parte apelante, a la parte apelada, no así al señor Morales Amaro.

En desacuerdo con lo resuelto en torno al pago de los gastos por la suspensión del juicio, el 21 de febrero de 2025, la parte apelante interpuso una *Solicitud de reconsideración*,[52] la cual fue denegada mediante *Resolución* notificada el 26 de febrero de 2025.[53] Esta *Resolución* le fue notificada a la parte apelante, a la parte apelada, no así al señor Morales Amaro.

Tras haber quedado insatisfecha, el 27 de marzo de 2025, la parte apelante interpuso una *Petición de certiorari* en el alfanumérico KLCE202500306, para cuestionar la imposición de los gastos relacionados a la suspensión del juicio.[54] Entonces, mediante *Sentencia* emitida el 30 de abril de 2025, un Panel hermano de este Tribunal de Apelaciones expidió el auto de certiorari y modificó el cálculo matemático de las costas interlocutorias.[55] Dispuso que el cómputo debió ser $3,055.68 dólares en vez de $3,305.68.

Mediante *Orden* notificada el 8 de mayo de 2025, el tribunal de instancia dejó sin efecto una vista señalada para el 9 de mayo de 2025, y dispuso que estaría pendiente al recibo del *Mandato*, para efectos del juicio señalado para los días 4, 5 y 6 de junio de 2025.[56] Esta *Orden* le fue notificada a la parte apelante, a la parte apelada, no así al señor Morales Amaro.

Posteriormente, el 2 de junio de 2025, la parte apelante y la parte apelada presentaron moción conjunta para informar fechas

---

[51] SUMAC TPI, a la Entrada Núm. 114.
[52] *Íd.,* a la Entrada Núm. 117. No se desprende que este escrito le hubiese sido notificado al señor Morales Amaro.
[53] *Íd.,* a la Entrada Núm. 118.
[54] *Íd.,* a la Entrada Núm. 121.
[55] *Íd.,* a la Entrada Núm. 128.
[56] *Íd.,* a la Entrada Núm. 129.

hábiles para la celebración del juicio en su fondo.[57] En repuesta, mediante *Orden* notificada el 2 de junio de 2025, el foro *a quo* expresó que las mismas no eran hábiles y procedió a calendarizar el juicio para los días 12, 13, 14 y 18 de noviembre de 2025.[58] Puntualizamos que esta *Orden,* mediante la cual se reseñaló el juicio en su fondo, le fue notificada a la parte apelante, a la parte apelada, no así al señor Morales Amaro.

Así las cosas, el *Mandato* de este Tribunal de Apelaciones fue notificado el 1 de agosto de 2025.[59] Recibido el *Mandato,* mediante *Orden* notificada el 4 de agosto de 2025, el foro *a quo* dispuso que las partes tendrían un término de treinta (30) días para informar sobre la posibilidad de una transacción de forma tal que se pudiese disponer de las fechas separadas para otros casos.[60] Esta *Orden* le fue notificada a la parte apelante, a la parte apelada, no así al señor Morales Amaro.

De ahí, el 5 de agosto de 2025, la parte apelante presentó una *Moción solicitando vista para marcar prueba documental de parte demandante y reunión entre partes para posible acuerdo transaccional.*[61] En respuesta, mediante *Orden* notificada el 6 de agosto de 2025, el tribunal de instancia señaló vista transaccional y para marcar la prueba para el 20 de agosto de 2025 y dispuso que tendrían hasta el 18 de agosto de 2025, para presentar moción conjunta con los acuerdos alcanzados sobre la prueba documental y que la misma debía adjuntarse y marcarse, so pena de sanciones.[62] Esta *Orden* le fue notificada a la parte apelante, a la parte apelada, no así al señor Morales Amaro.

---

[57] SUMAC TPI, a la Entrada Núm. 131. No se desprende que este escrito le hubiese sido notificado al señor Morales Amaro.
[58] *Íd.,* a la Entrada Núm. 132.
[59] *Íd.,* a la Entrada Núm. 135.
[60] *Íd.,* a la Entrada Núm. 136.
[61] *Íd,* a la Entrada Núm. 137. No se desprende que este escrito le hubiese sido notificado al señor Morales Amaro.
[62] *Íd.,* a la Entrada Núm. 138.

Así las cosas, el 6 de agosto de 2025, la parte apelada incoó una *Moción solicitando orden*.[63] Esgrimió en resumido, que la parte apelante no había cumplido con el pago ordenado por motivo de la suspensión del juicio, suma que fue modificada por el tribunal intermedio. Solicitó que se ordenara el pago. Mediante *Orden* notificada el 13 de agosto de 2025, el tribunal de instancia concedió término para pagar la suma de dinero.[64] Esta *Orden* le fue notificada a la parte apelante, a la parte apelada, no así al señor Morales Amaro.

Luego, el 18 de agosto de 2025, la parte apelante y la parte apelada presentaron *Moción conjunta en cumplimiento de orden*.[65] Del escrito no se desprende que el señor Morales Amaro hubiese tenido participación alguna. La finalidad de este escrito fue para cumplir con lo ordenado el 6 de agosto de 2025. En esa misma fecha, y siguiendo igual curso de acción, presentaron una *Segunda moción conjunta en cumplimiento de orden*,[66] y una *Tercera moción conjunta en cumplimiento de orden*.[67]

El 20 de agosto de 2025, se celebró la vista transaccional.[68] Compareció la parte apelante y la parte apelada. No compareció el señor Morales Amaro ni representación legal alguna. Entre otras cosas, el foro primario dispuso añadir dos (2) días adicionales de juicio para el 20 y 21 de noviembre de 2025. La *Minuta* no fue firmada ni notificada a ninguna de las partes.

El 12 de noviembre de 2025, se celebró vista.[69] Compareció la parte apelante y la parte apelada. No compareció el señor Morales Amaro ni representación legal alguna. La parte apelante y la parte

---

[63] SUMAC TPI, a la Entrada Núm. 139. No se desprende que este escrito le hubiese sido notificado al señor Morales Amaro.

[64] *Íd.,* a la Entrada Núm. 140.

[65] *Íd.,* a la Entrada Núm. 141. No se desprende que este escrito le hubiese sido notificado al señor Morales Amaro.

[66] *Íd.,* a la Entrada Núm. 142.

[67] *Íd.,* a la Entrada Núm. 143.

[68] *Íd.,* a la Entrada Núm. 145.

[69] *Íd.,* a la Entrada Núm. 149.

apelada informaron no haber logrado acuerdo, por lo que comenzó el desfile de la prueba. Igual ocurrió el 13, 14 y 18 de noviembre de 2025, donde continuó el desfile de prueba.[70]

Así las cosas, el 19 de noviembre de 2025, la representación legal de la parte apelante interpuso un escrito para notificar que tenía una orden médica de recesar sus labores por dos (2) meses.[71]

En respuesta, mediante *Orden* emitida el 20 de noviembre de 2025, notificada al día siguiente, el tribunal de instancia dejó sin efecto los señalamientos de continuación de juicio en su fondo del 21 de noviembre de 2025, y 13 de enero de 2026.[72] Esta *Orden* le fue notificada a la parte apelante, a la parte apelada, no así al señor Morales Amaro.

Luego, el 20 de febrero de 2026, se celebró la continuación del juicio en su fondo.[73] Allí, compareció la parte apelante y la parte apelada. No compareció el señor Morales Amaro. Luego de concluir el desfile de prueba, el caso quedó sometido para la determinación del Tribunal.

De ahí, el 30 de marzo de 2026, la primera instancia judicial emitió y notificó la *Sentencia* apelada.[74] Puntualizamos que la *Sentencia* le fue notificada a la parte apelante y a la parte apelada por conducto de sus representantes legales. Conviene destacar que el señor Morales Amaro no fue notificado de la *Sentencia*.

Mediante su dictamen, luego de haber emitido sus determinaciones de hecho y conclusiones de derecho, el foro primario declaró *No Ha Lugar* la *Demanda* e impuso al apelante el pago de $12,000.00 dólares en concepto de honorarios por

---

[70] SUMAC TPI, a las Entradas Núm. 150, 151 y 153.
[71] *Íd.,* a la Entrada Núm. 148. No se desprende que este escrito le hubiese sido notificado al señor Morales Amaro.
[72] *Íd.,* a la Entrada Núm. 152.
[73] *Íd.,* a la Entrada Núm. 159.
[74] *Íd.,* a la Entrada Núm. 160.

temeridad. Además, ordenó a la parte apelada del título a presentar su memorando de costas.

Subsiguientemente, el 9 de abril de 2026, la parte apelada interpuso el *Memorando de costas*.[75] En el interín, el 14 de abril de 2026, la parte apelante presentó una *Moción de reconsideración de sentencia*.[76]

En respuesta a la solicitud de reconsideración, mediante *Resolución* emitida el 14 de abril de 2026, notificada el 20 de abril de 2026, el foro *a quo* denegó la misma.[77] Esta *Resolución* le fue notificada a la parte apelante, a la parte apelada, no así al señor Morales Amaro.

Luego, el 21 de abril de 2026, la parte apelante presentó *Impugnación memorando de costas*.[78] La parte apelada presentó su réplica.[79] En respuesta, mediante *Resolución* emitida y notificada el 6 de mayo de 2026, el tribunal de instancia autorizó el memorando de costas.[80] Esta *Resolución* le fue notificada a la parte apelante, a la parte apelada, no así al señor Morales Amaro.

En desacuerdo, el 20 de mayo de 2026, la parte apelante interpuso un recurso de *Apelación*.

Mediante *Resolución* emitida el 21 de mayo de 2026, concedimos a la parte apelada hasta el 18 de junio de 2026, para presentar su alegato en oposición. No obstante, conforme a la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, este Tribunal tiene la facultad de prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos en cualquier caso ante su consideración, con el propósito de lograr su más justo

---

[75] SUMAC TPI, a la Entrada Núm. 161. No se desprende que este escrito le hubiese sido notificado al señor Morales Amaro.

[76] *Íd.,* a la Entrada Núm. 163. No se desprende que este escrito le hubiese sido notificado al señor Morales Amaro.

[77] *Íd.,* a la Entrada Núm. 164.

[78] *Íd.,* a la Entrada Núm. 165. No se desprende que este escrito le hubiese sido notificado al señor Morales Amaro.

[79] *Íd.,* a la Entrada Núm. 166. No se desprende que este escrito le hubiese sido notificado al señor Morales Amaro.

[80] *Íd.,* a la Entrada Núm. 167.

y eficiente despacho.[81] En consideración a lo anterior, luego de haber examinado la totalidad de los autos ante nos, hemos colegido eximir a la parte apelada de presentar escrito en oposición al recurso de revisión judicial ante nos.

II

### A. Falta de jurisdicción por prematuro

La jurisdicción es el poder o la autoridad que posee un tribunal para resolver las controversias presentadas ante su consideración.[82] Los tribunales adquieren jurisdicción por virtud de ley, por lo cual no pueden arrogársela, ni las partes pueden otorgársela.[83] Es norma reiterada en nuestro ordenamiento que "los tribunales deben ser celosos guardianes de su jurisdicción y que no tienen discreción para asumir jurisdicción allí donde no la tienen".[84] Igualmente, nuestro Tribunal Supremo ha sido constante en expresar que las cuestiones relativas a la jurisdicción constituyen materia privilegiada.[85] De manera que, deben ser resueltas con preferencia, pues, incide directamente sobre el poder que tiene un tribunal para adjudicar las controversias.[86] Por tal motivo, cuando un tribunal carece de jurisdicción, debe declararlo y desestimar la reclamación sin entrar en sus méritos.[87] De lo contrario, cualquier dictamen en los méritos será nulo y no podrá ejecutarse.[88] Es decir, una sentencia dictada sin jurisdicción por un tribunal es una sentencia nula en derecho y, por tanto, inexistente.[89]

---

[81] *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág.15, 215 DPR __ (2025).
[82] *R&B Power, Inc. v. Junta de Subastas ASG,* 213 DPR 685, 698 (2024); *AAA v. UIA*, 199 DPR 638, 651-652 (2018).
[83] *Ríos Martínez, Com. Alt. PNP v. CLE*, 196 DPR 289, 296 (2016).
[84] *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 250 (2012); *S.L.G. Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 882 (2007).
[85] *A.A.A. V. Union Abo A.A.A.,* 158 DPR 273, 279 (2002).
[86] *Torres Alvarado v. Madera Atiles,* 202 DPR 495, 500 (2019); *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 372 (2018).
[87] *R&B Power, Inc. v. Junta de Subasta ASG,* supra, a la pág. 698.
[88] *Bco. Santander v. Correa García*, 196 DPR 452, 470 (2016); *Maldonado v. Junta Planificación*, 171 DPR 46, 55 (2007).
[89] *Montañez v. Policía de P.R.*, 150 DPR 917, 921-922 (2000).

Como corolario de lo anterior, el Tribunal Supremo de Puerto Rico ha desarrollado el principio de la justiciabilidad, el cual recoge una serie de doctrinas de autolimitación basadas en consideraciones jurisprudenciales que prohíben al foro judicial emitir opiniones consultivas.[90] Además, el aludido principio persigue evitar emitir decisiones en casos en los cuales realmente no existe una controversia, o dictar una sentencia que no tendrá efectos prácticos sobre un asunto.[91] En ese contexto, un caso no es justiciable cuando: (i) se trata de resolver una cuestión política; (ii) una de las partes carece de legitimación activa para promover un pleito; (iii) después de comenzado el litigio hechos posteriores lo tornan en académico; (iv) las partes pretenden obtener una opinión consultiva, y (v) cuando se pretende promover un pleito que no está maduro.[92]

En nuestra función revisora, un recurso judicial es prematuro cuando el asunto del cual se trata no está listo para adjudicación; esto es, cuando la controversia no está debidamente delineada, definida y concreta.[93] Como ha pronunciado reiteradamente el Tribunal Supremo, un recurso prematuro adolece del insubsanable defecto de privar de jurisdicción al tribunal al cual se recurre.[94] Como tal, su presentación carece de eficacia y no produce ningún efecto jurídico, pues no hay autoridad judicial para acogerlo.[95]

Finalmente, conviene mencionar que la Regla 83 del Reglamento del Tribunal de Apelaciones,[96] confiere facultad a este

---

[90] El principio de justiciabilidad fue incorporado jurisprudencialmente a nuestro ordenamiento jurídico mediante el caso *ELA v. Aguayo*, 80 DPR 552, 595 (1958); Véase, además, R. Elfrén Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed., San Juan, Ed. Pubs. JTS, 1987, pág. 147.

[91] *Moreno v. Pres. U.P.R. I*, 178 DPR 969, 973 (2010).

[92] *Crespo v. Cintrón*, 159 DPR 290, 298 (2003).

[93] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008); *Juliá et al. v. Epifanio Vidal, S.E.,* 153 DPR 357, 366-367 (2001).

[94] *Juliá et al. v. Epifanio Vidal, S.E.*, supra, a la pág. 365.

[95] *Torres Alvarado v. Madera Atiles,* supra, a la pág. 501; *Juliá et al. v. Epifanio Vidal, S.E.,* supra, a la pág. 366.

[96] *In re Aprob. Enmdas. Reglamento TA*, supra, 2025 TSPR 42, pág. 110, 215 DPR __ (2025).

Tribunal para a iniciativa propia, o a petición de parte, desestimar un recurso o denegar un auto discrecional cuando este foro carece de jurisdicción.

### III

En el recurso ante nuestra consideración, la parte apelante ha comparecido ante nos tras su inconformidad con lo actuado con el foro de instancia luego de haber celebrado el juicio en su fondo y declarado *No Ha Lugar* la *Demanda,* así como de imponerle el pago de $12,000.00 dólares en concepto de honorarios por temeridad. De igual forma, acudió ante nos tras su inconformidad cuando la primera instancia judicial autorizó el memorando de costas interpuesto por la parte apelada.

Según hemos reseñado, el presente caso inició cuando la parte apelante compuesta por el señor Otero y el señor Salas, así como el señor Morales Amaro y el señor Goycochea Aponte interpusieron una acción civil contra BCPeabody. Luego de varias instancias procesales, el señor Goycochea Aponte, por conducto de su representante legal presentó una solicitud para desistir sin perjuicio de la causa de acción presentada por este. En respuesta, mediante *Sentencia parcial* notificada el 23 de mayo de 2022, tribunal *a quo* autorizó el desistimiento del señor Goycochea Aponte.

A partir de ese momento, las partes demandantes que se mantenían en el pleito eran: el señor Otero; el señor Salas y el señor Morales Amaro.

Luego de otros incidentes adicionales, la representación legal de la parte apelante, quien para ese entonces representaba también al señor Morales Amaro, incoó una solicitud de renuncia de representación legal tras razonar que existían diferencias irreconciliables. En respuesta, mediante *Orden* notificada el 29 de noviembre de 2022, el foro *a quo* autorizó la renuncia y concedió

término al señor Morales Amaro para anunciar nueva representación legal.

En lo relativo a este asunto, pudimos constatar, que el 29 de noviembre de 2022, y el 4 de enero de 2023, el tribunal de instancia emitió órdenes mediante las cuales, se apercibió al señor Morales Amaro de que anunciara su nueva representación legal, so pena de sanciones, ambas notificadas a la dirección postal de la parte. Mientras tanto, el señor Morales Amaro no contaba con representación legal en el caso.

Conviene recordar, que según reseñamos, precisamente en una vista, se argumentó sobre la necesidad de que el foro de instancia emitiera una orden al señor Morales Amaro, sobre su participación en el caso, so pena de desestimación. Lo anterior, con la finalidad de poder estar claros sobre quiénes eran las partes en el pleito. Así, el foro *a quo* lo hizo, emitió una *Orden* el 23 de enero de 2023, concediéndole al señor Morales Amaro un término para mostrar causa, so pena de desestimación.

El señor Morales Amaro nunca presentó escrito para cumplir con lo requerido ni el foro de instancia emitió dictamen desestimatorio, contrastando además, a lo dispuesto por la primera instancia judicial en su *Sentencia*, dado a que el señor Morales Amaro nunca desistió de la causa de acción de la cual participaba como parte demandante.

Un estudio de los autos demuestra que el señor Morales Amaro, peses a sus incumplimientos, siempre se mantuvo como parte demandante, puesto a que el foro de instancia nunca ejecutó sus advertencias sobre desestimar la causa de acción. Puntualizamos que, posterior a la renuncia de la representación legal y los requerimientos con apercibimiento dirigidas al señor Morales Amaro, el tribunal de instancia se limitó a notificarle algunas órdenes y resoluciones emitidas, mas no así otras, como por

ejemplo las de la calendarización final de la celebración del juicio en su fondo, entre otros asuntos procesales, incluyendo la *Sentencia* y la *Resolución* objeto de revisión. Abona a lo anterior, que como ya hemos expuesto, no surge de los autos que el foro primario hubiese dictado una sentencia de desestimación o desistimiento contra el señor Morales Amaro. Por tanto, a esta fecha, el señor Morales Amaro figura como parte demandante en este caso.

Con lo anterior en mente y como cuestión de umbral, este Tribunal viene llamado a auscultar su propia jurisdicción para atender un recurso. Con la finalidad de cumplir con esta encomienda, revisamos la totalidad de los autos ante nuestra consideración, así como los autos ante el foro de instancia a través del SUMAC TPI.

Entonces, según hemos relatado, en el trámite procesal que rodea el presente caso, pudimos constatar varias fallas que merecen la atención del tribunal de instancia. Sin embargo, en estos momentos, esta Curia tiene ante su atención la revisión de una *Sentencia*, así como de una *Resolución* autorizando un memorando de costas, por lo que corresponde auscultar nuestra facultad apelativa para intervenir con ella.

Según hemos expuesto, al revisar la totalidad de los autos ante nuestra consideración incluyendo los autos ante el foro apelado en el SUMAC TPI, pudimos constatar que la *Sentencia* apelada, así como la *Resolución* mediante la cual se autorizó el memorando de costas y que también es objeto de revisión, no fueron notificados al señor Morales Amaro.

Como es sabido, en nuestro ordenamiento jurídico es necesario que la notificación de las órdenes, resoluciones y sentencias emitidas por los tribunales se den de forma adecuada.[97]

---

[97] *Berrios Fernández v. Vázquez Botet,* 196 DPR 245, 250 (2016); *Bco. Popular v. Andino Solís,* 192 DPR 172, 183 (2015).

Es norma firmemente establecida que la notificación constituye una parte integral de toda actuación judicial.[98] De este modo, cuando una resolución, orden o sentencia no es notificada conforme a derecho, la misma "no surte efecto y los términos no comienzan a transcurrir."[99] Asimismo, se ha reiterado que, una notificación correcta y oportuna constituye un requisito *sine qua non* para la revisión judicial.[100]

Según señalamos previamente en nuestra exposición doctrinal, los tribunales están obligados a ser "celosos guardianes de su jurisdicción y no tienen discreción para asumir jurisdicción allí donde no la tienen".[101] Por tanto, es menester señalar que la notificación defectuosa de una sentencia torna prematuro el recurso presentado. Como ha pronunciado reiteradamente el Tribunal Supremo, un recurso prematuro adolece del insubsanable defecto de privar de jurisdicción al tribunal al cual se recurre.[102] Así pues, su presentación carece de eficacia y no produce ningún efecto jurídico, pues no hay autoridad judicial para acogerlo.[103]

Forzosa y mínimamente, el fatal error de haber omitido notificar los dictámenes objeto de revisión provoca que la *Sentencia,* así como la *Resolución,* no puedan ser objeto de revisión por este Tribunal, al menos en estos momentos. A tenor, y conforme a nuestra Regla 83(C),[104] procede desestimar el recurso por haberse presentado de forma prematura. Lo anterior no limita que, notificada de forma correcta la *Sentencia,* así como la *Resolución,* y luego de los trámites de rigor, la parte que así lo estime pueda acudir ante nos y solicitar el remedio que estime.

---

[98] *Bco. Popular v. Andino Solís,* supra, a la pág. 183.
[99] *Íd.*
[100] *Íd.*
[101] *Peerless Oil v. Hnos. Torres Pérez,* supra; *S.L.G. Szendrey-Ramos v. F. Castillo,* supra.
[102] *Juliá et al. v. Epifanio Vidal, S.E.,* supra, a la pág. 365.
[103] *Torres Alvarado v. Madera Atiles,* supra, a la pág. 501; *Juliá et al. v. Epifanio Vidal, S.E.,* supra, a la pág. 366.
[104] *In re Aprob. Enmdas. Reglamento TA,* supra, 2025 TSPR 42, pág. 110, 215 DPR __ (2025).

Por último, conviene recordar que el Tribunal, lo cual incluye a sus funcionarios, debe mantener especial atención al cumplimiento con las reglas procesales y a las directrices administrativas sobre notificación, pues, como bien expusimos, ello asegura el debido proceso de ley que ampara a las partes. Además, la supervisión constante de la Secretaría del Tribunal, al momento de notificar las determinaciones judiciales, resulta esencial para evitar que situaciones como la antes descrita se repitan. De esta manera, se promueve una gestión más eficiente y se evita la duplicación de esfuerzos y gastos innecesarios a los ciudadanos que acuden a nuestros tribunales.

IV

Por los fundamentos que anteceden, se *desestima* el recurso incoado por falta de jurisdicción.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones